T.C. Memo. 2019-125

UNITED STATES TAX COURT

MASSOUD FANAIEYAN AND ZIBA FANAIEYAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20618-17.                              Filed September 19, 2019.

Massoud Fanaieyan and Ziba Fanaieyan, pro sese.

Andrew R. Moore, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, Judge:  In a notice of deficiency dated August 1, 2017, respondent

determined a $15,270 deficiency in petitioners' Federal income tax and a $3,054

[*2] penalty under section 6662(a) for 2015.[1]  The issue for decision is whether

petitioners qualify for the premium assistance tax credit (PTC) under section 36B.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated

facts are incorporated in our findings by this reference.  Petitioners resided in

California when they timely filed their petition.  In 2015 Mr. Fanaieyan was

retired and owned rental properties, and his wife worked as a hairstylist.  Before

retirement he worked as a manager for a financial institution.

Petitioners received health insurance coverage through the Covered

California Health Insurance Marketplace created under the Patient Protection and

Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010), from

March through December 2015, and their two children received coverage from

March through September 2015.  Petitioners received the benefit of the $15,267 in

advance payments of the PTC (APTC) for their health insurance.

---

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for the year in issue.  Rule
references are to the Tax Court Rules of Practice and Procedure.  All monetary
amounts are rounded to the nearest dollar.

[2] Respondent has conceded that petitioners are not liable for the $3,054 sec.
6662(a) penalty.

[*3] Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2015. On their 2015 Form 1040 they reported adjusted gross income of $100,767 and claimed four exemptions (for themselves and their children) but failed to report the APTCs paid on their family's behalf or to reconcile that amount with their allowable PTC on Form 8962, Premium Tax Credit (PTC).

Respondent determined that petitioners were not entitled to the PTC and therefore increased their tax liability by the amount of the APTCs. After this case was continued from a previous trial calendar, petitioners provided to respondent a Form 1040X, Amended U.S. Individual Income Tax Return, for 2015. An attached Schedule C, Profit or Loss From Business, reported that Mr. Fanaieyan operated a publishing business that used the cash receipts and disbursements method of accounting, realized income of $731, and incurred expenses of $6,157 for a net loss of $5,426. That loss reduced petitioners' adjusted gross income reported on the Form 1040X to $95,341.

The publishing business consisted of Mr. Fanaieyan's efforts beginning no later than 2012 to publish and promote a book written by his sister. She wrote the book--a fictional account of challenges faced by a Baha'i student in Iran--to publicize the plight of a persecuted religious minority in Iran but was not able to publish it there. Mr. Fanaieyan wanted to support his sister's efforts to bring

[*4] attention to the issue and hoped that the book would generate enough revenue to cover publishing expenses and provide some income for his sister in Iran.  His efforts to promote his sister's book were spread over several years but did not take up most of his time and had ceased by 2015.  A schedule of income and expenses prepared by Mr. Fanaieyan shows (1) expenses for 2012 and 2013 for publishing the book and shipping it to various readers, (2) no expenses for 2014, and (3) a single expense of $1,500 for 2015 labeled "advance to the author".  The schedule also lists income from a few sales of the book in 2012 and 2013, but no sales in 2014 or 2015.

OPINION

## I.  Burden of Proof

Ordinarily, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In particular, taxpayers bear the burden of proving entitlement to any deductions claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  The burden of proof shifts to the Commissioner under section 7491(a) when a taxpayer comes forth with credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability.  See Rule 142(a)(2).  Petitioners do

**[*5]** not contend, nor does the evidence establish, that the burden shifts to respondent under section 7491(a) as to any issue of fact.

II. Premium Tax Credit

Section 36B provides for a PTC to subsidize the cost of health insurance purchased through a Health Insurance Marketplace by taxpayers meeting certain statutory requirements. See sec. 1.36B-2(a), Income Tax Regs. That section was created by ACA secs. 1401(a) and 10105(a)-(c), 124 Stat. at 213, 906, and the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, sec. 1001(a)(1), 124 Stat. at 1030, together commonly referred to as the Affordable Care Act. See McGuire v. Commissioner, 149 T.C. 254, 259 (2017). The PTC is available to households with incomes between 100% and 400% of the Federal poverty line. Sec. 36B(c)(1)(A). Eligible taxpayers may claim the PTC for health insurance covering dependents, sec. 36B(b)(2)(A), and dependents may not claim the credit on their own returns, sec. 36B(c)(1)(D). APTCs are made directly to an insurer during the taxable year. ACA sec. 1412(c)(2)(A), 124 Stat. at 232 (codified at 42 U.S.C. sec. 18082 (2012)).

APTCs made on behalf of a taxpayer or members of the taxpayer's household, including dependent children, must be reported on the taxpayer's Form 1040. If the amount of the APTCs exceeds the PTC to which the taxpayer is

[*6] entitled, the excess increases the tax owed by the taxpayer and reduces any refund otherwise payable to the taxpayer. Sec. 36B(f)(2); sec. 1.36B-4, Income Tax Regs.; sec. 1.36B-4T(a)(1)(ii)(A), Temporary Income Tax Regs., 79 Fed. Reg. 43628 (July 28, 2014) ("A taxpayer must reconcile all advance credit payments for coverage of any member of the taxpayer's family."); see McGuire v. Commissioner, 149 T.C. at 261.

Petitioners do not dispute the facts surrounding the APTCs made on their behalf; they argue only that they should be able to deduct losses arising from the publishing business claimed on their 2015 Form 1040X, reducing their income by that amount. The Federal poverty line for 2015 for a family of four residing in California was $24,250 and 400% of the Federal poverty line was $97,000. See 80 Fed. Reg. 3236-3237 (Jan. 22, 2015).

If petitioners are entitled to a deduction for the publishing business losses their household income (defined as their adjusted gross income with modifications not relevant here, sec. 36B(d)(2); sec. 1.36B-1(e)(2), Income Tax Regs.) would fall below 400% of the applicable Federal poverty line for their family, and they would be entitled to the PTC.[3] Therefore, we must decide whether petitioners'

---

[3] Respondent has not argued that petitioners' household income, as defined in sec. 36B(d)(2), should be increased above the adjusted gross income of $100,767 that petitioners reported originally.

**[\*7]** adjusted gross income as initially reported for 2015 may be reduced by the losses that they now claim for Mr. Fanaieyan's publishing business.

III. Publishing Business

Several obstacles stand in the way of petitioners' deduction of the publishing business expenses.[4] First, most of the expenses on Mr. Fanaieyan's schedule of income and expenses for the publishing business were paid in 2012 and 2013, and by 2015 he had abandoned the business entirely. Mr. Fanaieyan explained that he treated the expenses as akin to capital investments; therefore, he deducted them for 2015 because he had abandoned the business by then. The problem with his reasoning is that he reported these expenditures on Schedule C as business expenses. Therefore, if deductible at all under section 162, they were deductible under the cash method of accounting for the year when paid. Secs. 1.446-1(c)(1)(i), 1.461-1(a)(1), Income Tax Regs.[5] Mr. Fanaieyan's schedule of income and expenses lists the $1,500 advance to the author as the only expense paid in 2015. Thus, because he had ceased the publishing business by 2015, it was

---

[4] Because we conclude that petitioners are not entitled to the deductions, we need not address an additional obstacle: substantiation.

[5] Sec. 1.461-1(a)(1), Income Tax Regs., restricts deduction of expenditures that create assets with useful lives extending substantially beyond the close of the taxable year of payment. And sec. 1221(a)(1) defines "capital asset" to exclude property held for sale by the taxpayer in his trade or business.

**[\*8]** not deductible as a business expense for 2015 even if we assume it met the other requirements for deductibility.

In addition, petitioners failed to establish that the publishing business was an activity engaged in for profit for purposes of section 183(a). That section disallows deductions for an activity "not engaged in for profit", except to the extent of the gross income from the activity (unless the deductions are otherwise allowable without regard to profit considerations). Sec. 183(a) and (b). The statute directs us to the standards under sections 162 and 212(1) and (2) to determine whether an activity is "not engaged in for profit". Sec. 183(c). Section 162(a) allows deductions for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business", and section 212(1) and (2) allow deductions for "ordinary and necessary expenses paid or incurred during the taxable year * * * for the production or collection of income" or "the management, conservation, or maintenance of property for the production of income".

Our determination regarding profit motive is based on the application of objective standards to all of the facts and circumstances of each case. Sec. 1.183-2(a), Income Tax Regs. Objective facts outweigh the taxpayer's statement of intent. Id. However, there need not be a reasonable expectation of profit for us to

**[\*9]** find a profit motive; showing a small chance of making a large profit may be sufficient. Id.

Section 1.183-2(b), Income Tax Regs., provides nine nonexclusive factors to take into account in determining whether a profit motive exists: (1) the manner in which the taxpayer carries on his activity; (2) the expertise of the taxpayer and his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) whether the assets used in the activity are expected to appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the extent to which the taxpayer derives personal pleasure or enjoyment from the activity. Our consideration is not limited to these factors, and none of them is determinative.

The totality of the facts and circumstances, including these factors, indicates that Mr. Fanaieyan did not engage in the publishing business with the "predominant, primary or principal objective" of making a profit. See Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), aff'g T.C. Memo. 1991-212; see also Warden v. Commissioner, T.C. Memo. 1995-176, 1995 WL 225579, at \*6 (listing cases that apply the profit motive requirement in section 183(c)), aff'd, 111

**[\*10]** F.3d 139 (9th Cir. 1997). While Mr. Fanaieyan hoped that the book would pay for itself and perhaps generate a little income for his sister, his primary objective was to support his sister's efforts to publicize the issue raised by the book, not to make a profit on its sale. See Hylton v. Commissioner, T.C. Memo. 2016-234, at \*30 (explaining that where a taxpayer has both personal and profit objectives for engaging in an activity, it is the Court's task to determine which objective was primary), aff'd, 721 F. App'x. 300 (4th Cir. 2018). He had no history or particular expertise in publishing, and his testimony at trial convinced us that he did not devote most of his time to it. When we characterized the activity as a "labor of love" at trial, he agreed and added that he wanted the book to generate income for his sister. His motives are commendable, but they are not enough to entitle petitioners to deduct any of their reported business expenses.

## IV.  Conclusion

Because petitioners are not entitled to deduct their claimed business expenses, their household income exceeds 400% of the applicable Federal poverty line for 2015, and they are not entitled to the PTC for that year.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

[*11] To reflect the forgoing,

<u>An appropriate decision</u>

<u>will be entered</u>.